Good morning, Your Honors. I'm John Weber representing Globefill, Inc., the plaintiff below and the appellate here. Would you wait a second until everybody can get seated? We're having a traffic jam. May I? Yeah, it's okay. We're not starting the clock yet. Oh, good. All right. Sorry for the over-anxiousness. May it please the Court. The elements spent 25 pages in its brief talking about why it didn't commit misconduct and only two full pages talking about prejudice. But this case is about prejudice. Primarily, the elements argued that its misconduct wasn't the same as the misconduct in Byrd v. Glacier. So let's focus on the misconduct issue. As I understand it, the misconduct is referring three times in the closing argument to things outside the record and probably inaccurately referring to them. Is that fair? Yes, Your Honor. And below, your side objects to the second statement only, correct? That's correct, Your Honor. I'm not worried about waiver for the moment. The judge sustains the objection. And then you later file a new trial motion. The judge says, yeah, that's misconduct. Maybe I ought to report him to the bar. But I don't think it was enough to upset the jury verdict. How do we review that determination? Well, we objected. No, I'm not saying that you waived it. I'm saying we're here reviewing the new trial motion, right, because the judge made no mistakes during summation. The only time you objected, he sustained it. Yes. She sustained it. I'm sorry. So the question is, how do we review the district court's determination that despite the misconduct of your opponents, a new trial was not warranted? Well, it's abuse of discretion, and it's a clear error. The fact that we objected under Maricopa County v. Maybury, this court said that it's a material prejudice type of analysis. In U.S. v. Bluford, in a criminal court case, you said that it's basically harmless error if there's a contemporaneous objection, and that's more likely than not. All right, let's forget about whether or not there was an objection. Let's get to the meat of this thing. Explain to me factually how the misconduct by opposing counsel permeated the entire proceeding so that the jury verdict should be vitiated. In Hemmings v. Tidyman, this court said the general rule is that misconduct needs to permeate. But the court went on to say, though, that in determining whether there's prejudice, you analyze the likelihood of prejudice, and decided a really good First Circuit case for that that laid out a nice test. It had six factors. It was a nature of ‑‑ Why was it so prejudicial here in this case? It was referred to in the closing argument. You had the rebuttal. You had a jury instruction. Why did this particular misconduct, which was referencing a document that they had moved to keep out of evidence and making it seem like your client had taken two different positions, when, in fact, it was their client who had taken two different positions, why did that ultimately infect the jury's verdict? They accused us of deceit. They accused us of taking one position, publicly a position that was contrary to the position that we're asking the jury to decide, and they accused us of keeping that from the jury. It's hard to imagine that ‑‑ and this was a case that, you know, we won. We won this case. The only evidence ‑‑ You didn't win the case. The jury looked at the jury. I mean, look, at the end of the day, the jury looked at these two bottles and determined that they weren't so similar as to be a trade dress violation. I probably would have come out the other way, but that's why we have juries. Well, the jury instructions were good and accurate. So the jury was properly instructed. This is not a summary judgment case. It's not a JMOL case. The jury reached the wrong conclusion, perhaps, but that happens to juries all the time. I'm not clear. Why do you think you won the case? The jury instruction says a couple of things. The evidence against ‑‑ the evidence that elements said was in their favor were basically two things. They said that you compare the differences, not the similarities. So talk about opaque versus clear. You talk about the angle of the spout, that sort of thing. However, they obtained a seizure of Glofil's products in Mexico by relying on the shape. They weren't talking about opaque versus clear down there. It was the shape only. They also ‑‑ the only other ‑‑ But you were allowed to argue about what they said in Mexico. Yes, Your Honor. So the jury heard all that, heard some stuff it shouldn't have heard. And Judge Wardlow's question is the one that troubles me, too. So why is it that we should conclude that the judge who watched the whole trial made appropriate rulings on everything, in your view, except the new trial motion? Why should we conclude that the judge was wrong in saying this was bad stuff but not bad enough to throw out this jury verdict? The judge played the wrong rule. The judge didn't weigh the evidence. The judge looked only to the frequency of the misconduct and compared it in a mathematical calculation to the closing as a whole, the trial as a whole. So your argument is that the judge looked only at the quantity of the misconduct, not the quality of it? Yes, Judge Wardlow. Okay. So, again, I just go back to ‑‑ so when you say we had the case won, you felt like you had the case won. And then this argument was made. Is that what you're saying? Yes, Judge Wardlow. We had an admission by elements that the shape alone was enough to ‑‑ and the fact is the shape alone was enough to impound our client's products in Mexico. We had an admission. Now, why didn't you put that one into evidence? Did you put that into evidence? Yes, Judge Wardlow. That was in the evidence? Yes. Okay. You had that. But I'm having a hard time right now remembering which part of the Mexico episode was in evidence and which part was not in evidence. The elements filed a motion in limine to exclude everything in Mexico on the basis of the seminal case for the Trademark Territoriality Doctrine, which is you can't rely on decisions made and whether two trademarks are existing in another country. So you had them in Mexico saying go seize their stuff, it's the same as ours. More or less. That's what happened in Mexico. And then you got the judge excluded the response. Right? No, Your Honor, we didn't. The judge only allowed the presentation of that, not the response, right? Yes, Your Honor. Okay. But that wasn't on our motion. That was on ‑‑ I understand. I understand. So what happened was the jury heard that they said in Mexico, they're the same, go seize them. Yes. What they weren't supposed to hear in summation was the response which said you shouldn't seize them for various reasons. Well, those various reasons are important, though. I understand. And that's why the judge kept it out. I think they committed misconduct. I'm ‑‑ I'm there, too. I'm also thinking you should have won. I think the jury should have gone your way, too. But the question that we have to ask here is how prejudicial was this misconduct? I mean, did it start with their motion in limine? Is that your argument? No, the misconduct took ‑‑ no, the ‑‑ It was only during closing argument, right? Only during closing. The motion in limine is fair. The trademark territoriality rule is a fair rule. It is unfair to talk ‑‑ in that case, in Fuji PhotoFilm, it was Fuji, the trademarks Fuji existing in Japan had no relevance in this case. So you'd have no problem if the district judge had granted the motion in limine entirely? Well, that was a ‑‑ no, Your Honor, because their admission, they seized their goods in Mexico. I understand, but you just said the foreign laws shouldn't make a big difference. Well, that wasn't a decision. That was a statement. That was the court's decision. That's why the court divided these. So if you rely on a decision ‑‑ Yeah, but that's why it's a little misleading to say it was their motion. You wanted to introduce their admission in Mexico, correct? Oh, yes, Your Honor. And they said, no, you shouldn't introduce it. Well, but they said you shouldn't introduce it because not so much because of their admission. Well, for whatever reason, and the judge said, no, no, I agree with you, it's introducible. Well, only that part. Only their statement. No, look, I understand. I understand the record. But it's a little unfair for you to say, well, it was all on their motion. They made the motion because you wanted to introduce this information, correct? I think it's worth looking at that, because that's not ‑‑ their motion was dependent upon you cannot rely on decisions made. I understand. I understand what the judge's ruling was. My only point was you're the one who, because you sought to introduce what they said in Mexico, that's what gave rise to the motion to eliminate, correct? Yes, Your Honor.  So it wasn't that they brought this issue up. It was in response to evidence that you wanted to put in. Yes, Your Honor. And getting back to Judge Wardlow's question regarding the why do we think we won, in addition to the, you know, claiming that the shape was enough, which it is, it's the dominant feature of the trade dress, the elements also ‑‑ or, sorry, elements didn't. Co‑counsel Kim Brandy also admitted that she encounters actual confusion in the marketplace. So the only other bit of evidence that they rely on is their survey, which tries to understand whether there's actual confusion. So are you arguing this is a JMOL case? Your briefs do. Your briefs argue that. We believe we're entitled to a judgment as a matter of law, Your Honor. So what do we do with the competing, the dueling experts, if you will? The dueling experts. One, their expert says, and we can all find an expert who can say anything, and your expert says something else. But their expert says, no, this is ‑‑ the market for tequila is different than the market for vodka, and consumers are not likely to be confused, and the fact that the face looks like a day of death skull as opposed to a regular skull makes it distinctive. And so the experts support their side. There's some evidence there. Is that evidence legally irrelevant? No, it's not legally irrelevant. It's just that it's overwritten by the admission by ‑‑ Well, but if it's overwritten, then it's not a JMOL case, right? If you've got better evidence than they do, it's not a JMOL case. It's a jury case. As this Court has often said, the best evidence of likelihood of confusion is actual confusion. We have an admission by co‑defendant Kim Branny that there was actual confusion. Yeah, but I'm asking a different question. I think your case was more powerful than theirs. Leading the record, I'm perplexed why you lost. And one of the questions is maybe it's the misconduct. But now you're arguing it's a JMOL issue, and I'm saying they had evidence. You had better evidence. Isn't that why we have a jury? The judge doesn't say, well, your evidence is better than theirs. I'm going to grant you a JMOL. The judge says, take it to the jury. Well, let's take a look at your question related to actual confusion and the fact that your case law also says that when you're looking at the sleek craft factors, actual confusion is really, really hard to find. Oftentimes it doesn't trickle up to people who are complaining, they're confused, but that doesn't make it to the manufacturer or the producer. That doesn't come to their attention. So it isn't a factor that you need to have at all times. And so this was a manufacturer. We have an eight‑part test, which is always a bad thing. And people have got evidence on one of the eight parts. You know, why is that a JMOL issue? We think you look at the ‑‑ you have an admission. I understand. I understand. You think that because ‑‑ Yes, Your Honor. Because of their admission, that's enough. Two admissions, yes. The actual confusion and the similar shape. Can I ask you to address an issue that I hope you think you don't want to Does it matter what standard we apply? I mean, as I understand it, the statute says, you know, this is not a winning party gets attorney's fee statute. You've got to have something more. And they're arguing that we ought to apply the patent law cases and require less of an extraordinary showing than we did before. But even under the lower standard that they advocate, isn't ‑‑ this just strikes me as one of ‑‑ as a plain vanilla trade dress case. I don't understand why it comes to the standard of requiring attorney's fees. Well, it doesn't. You know, the octane fitness case was, you know, all three branches of government are concerned about the trolls and the patent litigation. So it was an attempt But let's assume we apply that standard. Let's assume we apply that standard. Why does it still even meet that standard? It doesn't. This circuit, this circuit wasn't the target for the octane fitness. It was all about flexibility. This circuit has always been, has always been an exceptional case standard of the Lanham Act and the Patent Act. You don't apply the Patent Act. Lanham Act in a flexible manner. Unreasonable. The test is unreasonable the same as does it stand out from others in a, with respect to itself. Yeah, I guess, and I think I agree with you. We got two bottles that look pretty much alike. I can't believe that it's unreasonable for one side to sue the other over it. I wouldn't have believed it was unreasonable if they brought a suit against, you know, either way. So I'm having a hard time figuring out how this meets any, any. If we granted fees in this case, wouldn't we essentially be saying we're just doing fee shifting in every, in every trade dress case? Yes, Your Honor. Yes, Your Honor. And I know that's an issue that you hope you don't have to deal with. If you were to retry this case, how would you do it differently? You know, the hearing is one of the first things you do. Okay, I know. If you were to retry this case, how would you do it differently? We wouldn't do it differently, Your Honor. This was, we were the victims. We were the victim of misconduct. You can't, you can't tell the jury that we admitted to something that we're asking them to take a contrary position of, and you can't tell them that we kept that from you. That's unfair. It's fundamentally unfair. We're denied a fair trial. All right, why don't you reserve the rest of your time, and let's hear the other side. Good morning, Your Honors. May it please the Court. Paul Marks on behalf of Apelli Element Spirits, Inc. I've come down with a touch of laryngitis this weekend, so I hope you'll apologize for my voice. Mr. Miller, who's representing the other Apelli, Kim Brandy and I will be splitting our time 10 minutes apiece. This case does involve an appeal and a cross appeal. With regard to the appeal, it's our view that the judgment must be affirmed for one of the reasons that was discussed with my opponent, Mr. Weber, and that is specifically that the trial court decision that the perceived misconduct did not permeate the proceedings is unassailable. This is something that took place in three mentions during a closing. Does it have to permeate the proceedings? What if the quality, as Judge Wardlaw asked, of the misconduct is such in what I think anybody would say is at least a close case. What if the quality of the misconduct is such that it looks to us like it probably affected the jury's verdict? In the abstract, I think His Honor is correct. If there was a case, it's not this one, but if there was one. So that's what I'm asking. I think the district judge was correct in saying the misconduct didn't permeate the proceedings because it only occurred in the summation. My question is was it so serious that it nonetheless requires a new trial? And I appreciate the question because we firmly believe that there was no misconduct. You're going to have a hard time with me on that one, but go ahead. I think I am and I think I'd have a hard time if you had sat on the jury panel trying to convince you to give a plaintiff a defense verdict. No, but tell me why, after the judge had said, I'm going to exclude from evidence anything but the Mexico complaint, that counsel was entitled in summation to talk about something that was excluded from evidence? Sure. Because the sequence of events is as follows. We did, as His Honor mentioned, bring a motion in limine to exclude everything about Mexico for various reasons that I don't need to get into right now. Just deal with the judge's ruling. The judge said, I'll exclude everything except the complaint. I'll exclude everything except the complaint. And then during trial, we brought a motion to revisit that issue because we then saw during the trial. But she didn't buy it. She didn't let you introduce evidence about the response. That's not exactly what happened, Your Honor. What happened is we filed the motion and we were prepared to argue it, and then the CEO of Globeville testified. And during cross-examination, he testified that Globeville went down to Mexico and denied what was in the petition. Remember, the petition is the thing. Right. And I've read his testimony. He said, I don't know what was in the response down there, but I'm pretty sure we opposed it. That's what he says. He didn't say it in those exact words, but I've got his exact words in front of me, so you don't need to read them to me. Right. No, I understand that. And what he may not have known, but which is factually true, from the denial document. And remember, the denial document was not put before the jury. It's part of the record document. You can argue to the jury that, gee, the CEO was on the stand here and says they denied the allegations, and that's a fair argument. What you can't do is then say, and let me tell you what the denial said. That's misconduct. Tell me why that's not misconduct. And also misrepresent what the denial said. I mean, there was two things. I mean, perfectly fair to say, yeah, they're relying on that Mexican complaint, but their CEO says they denied it. So why are we fighting about that? That's a perfectly fair argument. I would invite the court to consider excerpts of record page 1471, which is a page from the denial document. True, the denial document is not in the record. It's in the appellate record? No, but it's not before the trial court. You were told not to use the denial document in the trial court. You were told it was excluded from evidence. I know what it says. It's a great argument for your side. But the judge kept it out of evidence. Well, the argument that I have, Your Honor, is precisely what was stated in the brief, and that is when Mr. Henney says, on the witness stand, we hired lawyers in Mexico, we went to Mexico, and we denied what is in the petition. That's right. And that's fair. That's what he said. He said, I don't know what's in the denial, but we denied what's in the petition. And you could have said to the jury, they denied what's in the petition, so you should pay no attention to it. But instead, you said, let me tell you what the denial said, and then misrepresented what it said. And even if you didn't misrepresent what it said, you were not allowed to say to the jury what the denial said. Don't you agree to that? No. If I did agree to it, it's not part of this record, because in the summation, we did not say what the denial said. We said that Mr. Henney said that, essentially, by denying the allegations of the petition, they're denying that there is confusion and that they can't have it both ways. I believe that's a fairly accurate paraphrase. No. What you said was, and of course, they didn't show you their denial. This is the one that's sustained, where they said, in effect, that there is no confusion. Objection, Your Honor. Sustained. You went forward and gave the content of the denial. You, I don't know, tried the case. The content of the denial was not supposed to be in front of the jury. That's what the judge told you. And the fact that the CEO conceded that there was a denial didn't give you license to say what you thought it said. So on the misconduct issue, I appreciate your position, but at least from my perspective, you're much better arguing the abuse of discretion standard from the judge, because you're going to have a hard time convincing me that this wasn't wrong. Now, Judge Pregerson and Judge Wardlaw may be more open to that argument. No, I agree with you. I think you've got to focus on abuse of discretion if you hope to be successful here. I think that's it, because the new – I think the misconduct was pretty egregious. So, I mean, how did the judge – why was the judge correct that this wasn't sufficiently prejudicial so as to sway the outcome of the trial? Sure. And I think, Your Honor, all that this Court has to do is look at the precedent of this Court in the Cooper case, which is 945 F. 2nd. 1103, where you had alleged misconduct that took place only in the closing argument, which is the situation here. Isolated incidents, which is the situation here, simply – One objection sustained to one of them, so that's – the judge at least kept – said to the jury, no, no, that's wrong. Right. And no objections to the other misconduct. And, frankly – and, again, this touches upon this whole was there misconduct issue, but when the plaintiff's trial lawyer came back in his reply summation and didn't say anything about what they now say is misconduct and which – Well, what could he have done? What could he have done in reply? Say, you know, that was misconduct because you're not allowed to know what's in the denial. The judge kept it out of evidence. I mean, I'm not sure there's an effective reply that can be given. You can only make it worse by focusing on it. Yeah. So please don't look at the elephant in the room. As a trial lawyer, I'm not sure I could think of an effective reply. I might have asked the judge for a curative instruction on the spot, and they didn't, and so all they got was the general jury instruction that don't pay any attention to the lawyers, they're just – they're part of the circus, but you ought to look at the evidence. Sure. But I'm not sure what counsel could have done to unring this bell. Sure. And I think the reason why he has a problem is because, again, you know, they're saying that we misrepresented the record. We believe that they misrepresented the record because the only evidence that we went down to Mexico and said confusion, likelihood, all of the things they're saying is this petition document, which is in the record. But if you look at that petition document, there are many things that are not there that they would like to have here. Number one, the word globe fill. We never said go seize globe fill bottles. Number two. But you never objected to their argument. Look, we're not – the issue here is not whether you got some excuse to go outside the record because their argument was unfair. The judge told you what the record was and you went past it. So I think what I find a close question in this case, and I'm hoping that you'll direct your argument, is why isn't this, in a case that looks pretty close on the merits, why isn't this sufficient misconduct to say let's go do this again without the misconduct? Sure. Again, Your Honor, I think the briefing – You don't have to concede all my hypothetical parts. Just get to that last point. Sure. And we don't think it's a close case. And at the start of this case, the trial court did not think it was a close case because you may recall this is the second time that this matter has been before the Ninth Circuit Court of Appeal. The trial judge dismissed this case on the pleadings, finding that the plaintiff had not even shown that it's – And the trial judge got reversed. The trial judge got reversed. But I think this is an indication of the fact that while two of the three panelists here have expressed that in looking at these bottles, they think that they would have been on the plaintiff's side if they were sitting jurors. We have six sitting jurors who were not. And we have a trial court who looked at the case. And I'm fine with the issue that this is a factual question. It's not a case – sometimes in criminal cases we talk about harmless error, right? We say, look, there's so much evidence the guy was guilty. Yeah, there's an error here, but we're not going to worry about it. But here this strikes me as a jury question. And you throw the misconduct into the scales of justice. So tell me why it didn't tip it enough for us to want to think about a new trial. In these cases, Your Honor, the scales of justice are weighed according to the eight-part test, the sleek craft test, which the Court indicated. And I'm sure the Court is very well familiar with that eight-part test. We're well familiar with it. I'm sorry, Your Honor. We're well familiar with it. Yes. But don't test us on all the parts. Well, one of the parts that we argued quite stridently at trial was the one that I think His Honor made reference to in saying, gee, they look pretty similar to me, and that is the third of the factors, which is similarity of the trade dress in terms of its look, its feel, its history. But there are seven other factors as well. And I think what we can all agree to is that the alleged misconduct here had to do with that factor alone. But there are seven other factors. For example, the eighth factor, Your Honor, is does the plaintiff intend in cases where there are different channels, in this case we have vodka versus tequila, does the plaintiff intend to move his or her business into that competing product line, product line differentiation? Nothing that was done in Mexico or said in Mexico or the alleged misconduct in summation really has anything to do with that. And the jury can't just look at the bottles and say, well, they seem pretty similar to me, yes, or they don't seem similar to me, no. They are required by oath to go through all eight of those factors and make a determination. And in this case, if there was misconduct, the misconduct, if there was something said out of line in the closing argument, it didn't go to all eight of those factors. Let me suggest another one that it didn't go to. Marketing channels. What does the misconduct here, that something happened down in Mexico, that there was a denial document which we weren't supposed to say the contents of, what does that have to do with the marketing channels between these two products? I don't think that's the right analysis. I don't think you would, I don't think it's a proper analysis when we're looking at prejudice in this light to, looking at the misconduct and determining whether it was prejudicial. I don't think we're supposed to go down the eight sleek craft factors. I think what we're supposed to do is say, because they don't really bear on each other, the misconduct is you made them look like they were concealing something from the jury. And the inference from that was that they had taken a position inconsistent with their position here. And it goes more to the ethics and credibility of their case as a whole, as opposed to the individual sleek craft factors. And all I'm suggesting, Your Honor, is that the jury had to look at all eight factors, the misconduct only argument. Your argument is essentially that your case was so strong that this couldn't, we shouldn't conclude this likely affected the jury verdict? Absolutely, Your Honor. And it's part of the reason, we knew what the prevailing law in the Ninth Circuit was on attorney's fees. We didn't need to bring an attorney's fees motion. But we really thought that we had a very strong case, which is why we brought one, and we still do. And I know I'm fighting an uphill battle on whether misconduct was committed or not, so I won't say anything else about it. You're also using your colleague's time, but you're helping us, so keep going. Well, I mean, maybe you should let your colleague. And by the way, I do believe that they did, that the Plaintiff's Trial Counsel did not preserve this record on the objections for appeal. So having said that, I will. Okay. Were you the trial counsel? I was the trial counsel in this case. Are you the one who did the closing? I was not. Okay. Who did the closing? Mr. Neufeld, who is present here. We thought that it would make sense. Yeah, I agree. No, I agree. I agree. I just wanted to know whether it's our, Mr. Miller? No. Mr. Miller represents the other appellee, Ms. Brandy. Okay. Thank you. Thank you. Let me share the calendar. May it please the Court, I'm John Miller. I represent Kim Brandy, who is a co-defendant, but separately represented by me at trial. I certainly don't have 10 minutes, which, since it's getting into the lunch hour, is probably good news for everybody. My focus is simply on one thing. I'm not here to defend necessarily the statements that were made in closing, but to defend both the trial judge and the jury who were there and made the decisions. In order for this Court to impact a five-day jury trial to the detriment of the parties, we need to find an abuse of discretion on the part of Judge Marshall, and I don't think there's any indication whatsoever of an abuse by Judge Marshall. She points out in her ruling that perhaps 30 seconds of a five-day trial involved these statements, 30 seconds of a one-hour closing. She sustained an objection to the reference to the actual document. I think I would posit that the other two statements weren't objected to because, in fact, Mr. Hemme did testify that there was a denial. The trial judge also twice instructed the jury not to consider the argument of counsel to be evidence, both in a pre-instruction before we started the evidence and not long after this closing argument was made. The unanimous jury came back in favor of the defendants, and to suggest that they did so by ignoring explicit instruction from Judge Marshall is, I think, an insult to the unanimous jury in the case. That's really all I have to add to that. Thank you, Judge. I think you had, Mr. Weber, about a minute. Do you remember what you had left? Okay. I just wanted to point out that Jonathan Hemme testified that, as you pointed out, Judge Hurwitz, that Jonathan Hemme testified that he didn't read the response. He didn't know what was in the response. He was told, upon further questioning, he testified that he was told it was a denial. But Elements knew that that denial didn't include anything related to likelihood of confusion. And you can use your time however you want. But I think the issue for the close issue for me in this case, the hard issue, is it's misconduct. I'm willing to accept it's misconduct. The question is, is it enough misconduct to overturn this jury verdict when the judge who was on the scene thought it wasn't? That's the essential issue in the case. Tell me why we should overturn the jury verdict. Well, we had one question on the verdict form. That one question on the verdict form was, is there a likelihood of confusion, yes or no? The testimony by Elements Counsel, who is an officer of the court, jury knew, presumed, I suppose, that this lawyer had read this response and believed that the response admitted, that we admitted, that there's no likelihood of confusion. That is the sole question on the verdict form. The prejudice, the district court never got to the issue of prejudice. The district court looked at whether it permeated or not. It never determined whether the quality of the false statements affected our right to a fair trial. So tell me why they did. I'm sorry, Your Honor? Tell me why they did. Why they did? Yeah, tell me why these statements so seriously affected your right to a fair trial. That's what you've got to convince me on, so tell me why. Well, we objected, so we're actually at a lower level and a lower standard. We're at, did they have a material effect? And is it more likely than not? It's rather than, we don't think we got a fair trial either. We think fundamental fairness was affected here. But there was, the court didn't really address whether or not this was a material effect on the verdict. It went right to whether it was plain error and just did a mathematical calculation. There was no determination made with respect to prejudice. That's why if you don't, if this court doesn't instruct the jury, I'm sorry, doesn't instruct the district court to enter a judgment as a matter of law, then we at least believe that this court should reverse every man with instructions to apply the test appropriately. How is there likelihood of consumers being misled or confused looking at the two global fill bottles and the skulls of element spirits? Well, as this court has said many times, the evidence of actual confusion is the best evidence of likelihood of confusion. We have the defendant, Kim Brandy, testifying, admitting that while out hawking the ca tequila, she encounters actual confusion. People walk up to her and ask her if it's a crystal head bottle. You don't always have evidence of that nature in a trademark or trade dress infringement case. Plus, every other sleek craft factor, you know, went our way. This is an inherently distinctive trade dress. You don't see alcoholic beverages bottled in a skull shape very often. It was the first time, we were the first time in the history, as far as we can tell, in the history of the alcoholic beverage industry. It was followed shortly thereafter by a similarly shaped skull and, you know, by elements. The products are sold in proximity. They are sold for the same purpose, sold in the same stores. One is vodka and the other is tequila. So the same purpose, though. Well. What's the purpose? I mean, I look at these skulls and I wouldn't find them very exciting. But as Your Honor knows, the jury was instructed this way, that similarities outweigh dissimilarities, especially when the dominant feature is what was copied by the infringer or the defendant. You've got skull heads going all the way back in history. Pirates used it. Football teams used it. It's usually held, it's usually, the purpose of the skull is to hold things other than alcoholic beverages, though. Because it leaks. All right. Okay. Okay. Well, maybe if you had too much to drink it looks all right. I don't know. All right. Thank you, counsel. Okay. Globeville v. Elements will be submitted, and this session of the court is adjourned for today. Thank you very much.
judges: Pregerson, Wardlaw, Hurwitz